1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM F. GARLOCK,

Appellant,

v.

ELLA THOMAS, et al.,

Appellees.

Case No. 16-cv-06052-RS

**ORDER AFFIRMING BANKRUPTCY COURT**

## I. INTRODUCTION

Defendant-appellant William F. Garlock appeals the Bankruptcy Court's judgment for appellees and the order denying his motion to amend that judgment. For the reasons that follow, both decisions are affirmed.

## II. BACKGROUND

In September 2007, plaintiff-appellees Ella Thomas and Dan Brune invested in a two-parcel retail mall located at 495-491 Oro Dam Boulevard in Oroville, California, known as the Feather River Village property. Garlock marketed the property to prospective investors in a marketing brochure, as well as in a confidential private placement memorandum, which outlined specific details of the investment and characteristics of the property. Included in these materials were representations that the property was 94-percent leased, that there was an income producing easement across the property; that the property was worth $10 million, and that there was a 30-

1  year, interest-only loan with Bank of the Orient on the property. In 2008, according to Thomas

2  and Brune, Garlock stopped making mortgage payments and the property went into foreclosure.

3  The Oroville investors, including Thomas and Brune, allegedly lost a combined $5 million.

4  Garlock denies that he simply stopped making mortgage payments, and claims that general

5  financial recession led to the property's financial decline. He asserts the property's tenants

6  defaulted on their leases, business revenues dropped, incomes plummeted, and that foreclosure

7  was inevitable in the "unforeseeable cataclysmic financial" situation at the time.

8        Garlock subsequently filed for bankruptcy. On June 17, 2013, over fifty separate

9  plaintiffs, including Brune and Thomas, filed a complaint against him in the bankruptcy

10  proceedings, claiming Garlock's debts to them were nondischargeable. Brune and Thomas argued

11  specifically that Garlock's debts involving the Feather River Village property were

12  nondischargeable under 11 U.S.C. § 523(a)(2)(A).

13        Under that provision, an individual debtor is not discharged from any debt obtained by

14  "false pretenses, a false representation, or actual fraud." To prevail on their claim, Brune and

15  Thomas had to demonstrate:

> (1) [that] the debtor made the representations;
> (2) that at the time he knew they were false;
> (3) that he made them with the intention and purpose of deceiving the creditor;
> (4) that the creditor relied on such representations; [and]
> (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

20  *In re Eashai*, 87 F.3d 1082, 1087 (9th Cir. 1996) (citations omitted). In their amended complaint,

21  filed on November 23, 2013, Brune and Thomas alleged Garlock defrauded them through various

22  misrepresentations about the property, including the extent of rentals on the property, its value of

23  $10 million, its good condition, and the existence of an income-producing easement across the

24  property. Brune and Thomas averred Garlock produced income statements and financial data to

25  induce investment, despite knowing at the time such information was not accurate. According to

26  Brune and Thomas, these combined misrepresentations regarding the property amounted to fraud,

27  rendering Garlock's debts nondischargeable and making Garlock personally liable to them.

28

1    A seven-day trial began on March 21, 2016. During Garlock's opening statement, he

2    argued the complaint was deficient because it did not state with adequate specificity which

3    representations plaintiffs' section 523(a)(2)(A) fraud claim referred to, or how the required

4    elements of the fraud claim could be proven. Garlock asserted Brune and Thomas simply alleged

5    "a menu list of items, but they [did not] actually frequently allege any facts to support them." Tr.

6    of Mar. 21, 2016 Hr'g at 17:16-7. He requested that all evidence which did "not bolster any

7    allegation of the complaint or [which was] outside the scope of the complaint" be considered

8    inadmissible by the court. *Id.* at 17:20. On that point, the court told Garlock that if plaintiffs

9    attempted to introduce evidence for inadequately pleaded claims, he could object to that evidence

10   at trial. In the absence of objection, the court explained, any unpleaded claims would still be tried.

11   During the trial, Brune and Thomas both testified that, although Garlock asserted in the

12   private memorandum given to prospective investors that the property had a 30-year loan on it, they

13   ultimately discovered through correspondence with the lender bank that it only had a one-year

14   term. This allegation was not explicitly referenced in plaintiff's complaint. At trial, plaintiffs

15   contended they relied on Garlock's statements about the term of the bank loan when signing on as

16   investors, with Brune noting that the 30-year mortgage was "the only reason" he got into the

17   investment. Tr. of Mar. 21, 2016 Hr'g at 150:11-12. Brune and Thomas also discussed

18   extensively their belief, based on Garlock's representations, that there was an income-producing

19   easement across the property. Brune testified that while the investment materials promised

20   "$200,000 per year would come from" an "easement that went from Oro Dam Boulevard across

21   the Oroville Shopping Center," the easement apparently did not exist. *Id.* at 75:4-10. Thomas

22   testified that there was no easement, because if there had been, the investors would have had those

23   revenues and they "would have been able to pay for the loan." *Id.* at 235:20. Garlock denied

24   making any fraudulent assertions about the existence of this income-producing easement,

25   explaining that even though he could not produce proof of it at trial, the easement existed and his

26   attorneys "told [him] it was recorded." Tr. of Mar. 24, 2016 Hr'g at 242:2. He did not object to

27   plaintiffs' testimony regarding his alleged misrepresentations of the loan term.

28

United States District Court
Northern District of California

1    The bankruptcy court issued its judgment on July 5, 2016.  It determined Garlock was

2    personally liable under section 523(a)(2)(A) for defrauding plaintiffs through false representations

3    in two dispositive areas of "critical concern": the term on the bank loan and "the situation

4    regarding the easement."  Tr. of July 5, 2016 Hr'g at 7:6-8.  The court awarded $462,000 to Brune

5    and $500,000 to Thomas.  All claims regarding the other properties at issue were decided in

6    Garlock's favor.

7    On August 11, 2016, Garlock filed a motion to amend the judgment under Federal Rule of

8    Bankruptcy Procedure 9023.  Garlock contested the bankruptcy court's findings about both the

9    easement and the loan misrepresentations.  First, Garlock argued that because he was able to then

10   show a copy of the recorded easement, he incontrovertibly demonstrated its existence, disproving

11   any easement-related fraud claims.  Second, Garlock argued that there was insufficient evidence to

12   demonstrate any false statement regarding the term of the bank loan was made with knowledge of

13   its falsity or with intent to deceive investors.  Garlock also asserted that the loan-term issue could

14   not, in any event, be a basis for finding his debts nondischargeable, as it was not pleaded in the

15   complaint, and Brune and Thomas did not present at trial any evidence regarding his knowledge or

16   intent to deceive.  Garlock urged the court to find that plaintiff's "gross pleading deficiencies"

17   with respect to the loan misrepresentations could not be cured through trial by implied consent

18   under Federal Rule of Bankruptcy Procedure 7015.[1]  Reply to Opp'n to Mot. to Am. J. at 6.

19   Garlock further argued he was not able to object to the introduction of evidence regarding his

20   knowledge of the misrepresentation and intent to deceive because plaintiffs never produced any

21   such evidence at trial.  Garlock conceded that while he "accidentally made a false statement" with

22   respect to the term of the loan, the court had no reason to conclude he did so knowingly or with

23   intent to deceive his investors.  Mot. to Am. J. at 16:1.

---

[1] Rule 7015 applies Federal Rule of Civil Procedure 15(b) in its entirety.  Rule 15(b) allows issues
clearly raised at trial and not objected to, to be tried by implied consent.  These issues must be
treated in all respects as if raised in the pleadings.  Parties can move to amend the pleadings "to
conform them to the evidence and to raise an unpleaded issue.  But failure to amend does not
affect the result of the trial of that issue."  Fed. R. Civ. P. 15(b)(2).

United States District Court
Northern District of California

1    On September 30, 2016, the bankruptcy court denied Garlock's motion to amend the

2    judgment. The court asserted that, at the time of trial, there was "sufficient evidence to support the

3    factual determination that there was no easement," and Garlock's claim he could then prove its

4    existence was not enough to warrant reconsideration of the judgment. Mot. to Am. J. H'rg at

5    22:18-19. Further, the court determined the loan-term issue was tried by implied consent under

6    Fed. R. Bankr. P. 7015, reasoning that extensive "testimony and the documentation" throughout

7    trial, which Garlock could have objected to, overcame any "inadequacy in the pleading." *Id.* at

8    35:11-12. Thus, the inconsistencies between Garlock's affirmative statements about the term of

9    the bank loan and the actual nature of the loan supported liability for fraud.

10   Garlock filed this appeal. The parties dispute whether he appeals both the underlying

11   judgment of the bankruptcy court and its denial of his motion to amend that judgment, or only the

12   original judgment. Brune and Thomas contend that Garlock has not properly appealed the

13   bankruptcy court's denial of his motion to amend the judgment because he did not state his

14   intention to appeal that order in his notice of appeal. Thus, Brune and Thomas argue that this

15   court does not have jurisdiction to hear the appeal of that order under Rule 8003 of the Federal

16   Rules of Bankruptcy Procedure, which requires the contents of a notice of appeal to be

17   accompanied by the judgment or order being appealed.

18   ### III. STANDARD OF REVIEW

19   The district court reviews the bankruptcy court's findings of fact for clear error and its

20   conclusions of law de novo. *In re Anastas*, 94 F.3d 1280, 1283 (9th Cir. 1996). A finding of

21   whether a requisite element of 11 U.S.C. § 523(a)(2)(A) is satisfied is a factual determination

22   reviewed for clear error. *Id.* Under the clear error standard, the district court accepts findings of

23   fact made by the bankruptcy court "'unless these findings leave the 'definite and firm conviction

24   that a mistake has been committed by the bankruptcy judge.'" *In re Rains*, 428 F.3d 893, 900 (9th

25   Cir. 2005) (quoting *Latman v. Burdette*, 366 F.3d 774, 781 (9th Cir. 2004)).

26   The bankruptcy court's decision to grant a Rule 15(b) motion, allowing issues raised

27   without objection during trial to be tried by implied consent, is reviewed for abuse of discretion.

28

ORDER AFFIRMING BANKRUPTCY COURT
CASE NO. 16-CV-06052-RS

1    *Galindo v. Stoody Co.*, 793 F.2d 1502, 1512 (9th Cir. 1986).  Whether the bankruptcy court

2    properly considered and granted the motion to amend under Fed. R. Bankr. P. 9023 is also

3    reviewed for abuse of discretion.  *In re Kaypro*, 218 F.3d 1070, 1073 (9th Cir. 2000).  Abuse-of-

4    discretion review requires a two-step inquiry.  *In re First Yorkshire Holdings, Inc.*, 470 B.R. 864,

5    868 (9th Cir. B.A.P. 2012).  "[T]he first step . . . is to determine de novo whether the [bankruptcy]

6    court identified the correct legal rule to apply to the relief requested."  *United States v. Hinkson*,

7    585 F.3d 1247, 1261-62 (9th Cir. 2009).  The second step asks if the bankruptcy court's

8    application of that standard, or the court's factual findings, were illogical, implausible, or "without

9    support in inferences that may be drawn from facts in the record."  *Id.* at 1262 (citation and

10   internal quotation marks omitted).  Error at either step constitutes an abuse of discretion.  *See id.* at

11   1261-63.

## IV. DISCUSSION

13   Garlock asserts the bankruptcy court erred in awarding judgment to Brune and Thomas on

14   their 11 U.S.C. § 523(a)(2)(A) claim and in its denial of Garlock's motion to amend the

15   judgment.[2]  Conversely, Brune and Thomas disagree, and claim that the district court does not

16   even have jurisdiction to review the bankruptcy court's denial of Garlock's motion to amend,

17   because the notice of appeal does not indicate Garlock's intention to appeal that order.

### A.  The Bankruptcy Court Properly Tried the Loan Term Issue by Implied Consent

19   Garlock faults the bankruptcy court's consideration of alleged false representations

20   regarding the loan term as a basis for recovery under 11 U.S.C. § 523(a)(2)(A).  According to

21   Garlock, Brune and Thomas neither asserted the loan-term misrepresentation in their complaint,

22   nor offered any evidence that Garlock misrepresented the loan both knowingly and with the intent

23   to deceive investors, two elements of a section 523(a)(2)(A) claim.  Thus, according to Garlock,

24   he had no legitimate opportunity to object to the loan-term allegation at trial, and it could not have

25

26

27   [2] Appellees refer to this action in their reply brief as the "Motion for Reconsideration."  Both
parties are referring to Garlock's Rule 9023 motion.

28

1  been tried by implied consent under Federal Rule of Bankruptcy Procedure 7015.

2  Rule 7015, incorporating Rule 15(b)(2) of the Federal Rules of Civil Procedure, allows for

3  "Issues Tried by Consent," both during and after trial.  When an "issue not raised by the

4  pleadings" is tried by express or implied consent, it "must be treated in all respects as if raised in

5  the pleadings." Fed. R. Civ. P. 15(b)(2).  To establish implied consent, the plaintiff must

6  demonstrate that the defendant "understood evidence had been introduced" to prove the issue, and

7  that it had been "directly addressed." *In re Acequia, Inc.*, 34 F.3d 800, 814 (9th Cir. 1994)

8  (citation and internal quotation marks omitted).  If the court enters judgment on an issue tried "by

9  consent without the pleadings having been formally amended, the lack of amendment does not

10  matter." *In re Yadidi*, 274 B.R. 843, 851 (9th Cir. B.A.P. 2002).

11  The bankruptcy court did not abuse its discretion in deeming the loan-term issue tried by

12  implied consent under Rule 7015.  The court explained to Garlock early in the trial that if

13  "evidence comes in without objection, then the law is clear and then it comes in, whether it's plead

14  or not." Tr. of Mar. 21, 2016 Hr'g at 19:6-8.  At trial, Brune articulated that he had believed,

15  based on representations made by Garlock, that the mortgage on the property was a 30-year fixed

16  rate loan and that without this information he "wouldn't have gotten into" the investment. *Id.* at

17  90:14.  Similarly, Thomas testified that the investment was "not the investment that had been

18  represented" to her, because she was told both orally and in writing that the property had a 30-year

19  loan on it. *Id.* at 154:11.  Garlock did not object to this testimony.

20  It was apparent from direct discussions with Brune and Thomas about the Bank of the

21  Orient loan that the court was contemplating Garlock's loan statements as fraudulent under section

22  523(a)(2)(A).  For example, both parties discussed their reliance on Garlock's loan-term

23  statements when deciding to sign on as investors, without any objection from Garlock.  When

24  Brune was asked at trial whether he was ever "induced to sign any documents" that made him

25  liable on the mortgage, he explained that he relied on the assumption that it was a 30-year loan

26  because he and his wife "were very cognizant of loans and what it meant, and [they] didn't want

27  anything that was too short because it's too risky." Tr. of Mar. 21, 2016 Hr'g at 90:15-23.  Brune

28

1   articulated that the loan was not what Garlock had represented to him, explaining that the actual

2   short-term nature of the loan was the straw that broke the camel's back leading to the property's

3   foreclosure and plaintiffs' eventual financial loss.  After learning about the supposed 30-year loan

4   through Garlock, Thomas noted that she specifically wanted and asked for banking documents,

5   and was "promised that [she] would get them" prior to investing, but ultimately had to call the

6   bank to discover the true nature of the loan.  Tr. of Mar. 22, 2016 Hr'g at 36:5.  This line of

7   questioning and testimony from Brune and Thomas provided Garlock with the requisite notice that

8   "evidence had been introduced" regarding the alleged fraudulent nature of his statements about the

9   term of the loan, providing him with the chance to object before the issue was allowed in by

10  implied consent.  *See In re Acequia*, 34 F.3d at 814.  Thus, the bankruptcy court's determination

11  that the loan misrepresentation claim was tried by implied consent under Rule 7015 was not

12  illogical, implausible or without support in inferences that may be drawn from the record.

13  *Hinkson*, 585 F.3d at 1262.

### B. The Bankruptcy Court's Factual Findings Regarding the Loan-Term Issue Stand

15      Garlock also contests the bankruptcy court's factual findings, arguing Brune and Thomas

16  introduced no evidence to establish knowledge and intent to deceive, as required to prevail on a

17  section 523(a)(2)(A) claim.  When evaluating the knowledge element, a bankruptcy court can find

18  a representation fraudulent, even without direct knowledge of falsity, "if the person making it is

19  'conscious that he has merely a belief in its existence and recognizes that there is a chance, more

20  or less great, that the fact may not be as it is represented.'"  *In re Gertsch*, 237 B.R. 160, 168 (9th

21  Cir. B.A.P. 1999) (quoting Restatement (Second) of Torts § 526 cmt. e (1977)).  The court may

22  find intent to deceive "where there has been a pattern of falsity or from a debtor's *reckless*

23  indifference to or disregard of the truth."  *In re Khalil*, 379 B.R. 163, 173 (9th Cir. B.A.P. 2007)

24  (citation and internal quotation marks omitted).  "Both the knowledge and intent elements under

25  § 523(a)(2)(A) may be established by circumstantial evidence and inferences drawn from a course

26  of conduct."  *In re Hirth*, No. 10-39593, 2014 WL 7048395, at \*10 (9th Cir. B.A.P. 2014)

27  (citation omitted).

28

ORDER AFFIRMING BANKRUPTCY COURT
CASE NO. 16-CV-06052-RS

8

1    The bankruptcy court's conclusion that Brune and Thomas established the elements of

2    fraud under section 523(a)(2)(A) with respect to the loan-term issue was not clearly erroneous.

3    The court found an absence of evidence to demonstrate that the loan statements made in Garlock's

4    "misleading" documents, created by multiple individuals specifically to induce investors, were

5    made by accident. *See* Mot. to Am. J. H'rg at 35:17. Garlock not only relayed what he later

6    characterized as an attorney's mistake regarding the financing in the private placement

7    memorandum, but also mentioned it orally to Thomas. The court properly determined from this

8    "pattern of falsity," as well as "from the totality of the circumstances," including the apparently

9    desperate and credulous situation of the investors "facing 1031 tax consequences," that the

10   misleading contents of the documents were intentionally promulgated. *See In re Gertsch*, 237

11   B.R. at 168; Tr. of July 5, 2016 Hr'g at 8:1.

12   Even without explicit evidence of Garlock's knowledge of the falsity of his statements, the

13   court had enough information from Garlock's course of conduct to conclude that there was a

14   "chance, more or less great" that he knew his representations about the loan were false. *See In re*

15   *Gertsch*, 237 B.R. at 168. The bankruptcy court questioned why Garlock only articulated after

16   trial that his attorneys had made a written mistake in the marketing materials, without attempting

17   to reconcile what appeared to be "inconsistent affirmative statements about the nature of the

18   financing in contrast to what in fact was the financing." Mot. to Am. J. H'rg at 23:6-8. Although

19   the court conceded that the loan issue was a closer call than the easement determination, looking at

20   the entire course of Garlock's conduct, which involved him making repeated false representations

21   in an attempt to retain investors, the court concluded that there was a sufficient chance he knew of

22   the falsity of those statements. *See In re Hirth*, 2014 WL 7048395, at \*10; Mot. to Am. J. H'rg at

23   35:10.[3] This was not clear error. *See In re Rains*, 428 F.3d at 900.

24

25
26   [3] Even if, as the bankruptcy court points out, the loan issue is a closer call than the easement issue, the two are each independently sufficient to support liability under section 523(a)(2)(A). Garlock would have been liable in any event because of the easement misrepresentation. *See infra* Part
27   IV.D.

28                                                          ORDER AFFIRMING BANKRUPTCY COURT
                                                            CASE NO. 16-CV-06052-RS

**C. The District Court Has Jurisdiction to Review the Denial of the Motion to Amend**

Brune and Thomas assert that because the notice of appeal does not state Garlock's intention to appeal the denial of his motion to amend, the district court does not have jurisdiction to review that order.[4] In his notice of appeal, Garlock explicitly appealed the bankruptcy court's underlying judgment, but neglected to include his intention to appeal the denial of his motion to amend the judgment. Under Federal Rule of Bankruptcy Procedure 8003(a)(3)(B), a notice of appeal should be "accompanied by the judgment, order, or decree, or the part of it, being appealed." Although there is no controlling authority interpreting the scope of Rule 8003, the Supreme Court and the Ninth Circuit have set forth general principles regarding the interpretation of Federal Rule of Appellate Procedure 3(c), which contains nearly identical language to Rule 8003(a)(3). *See Smith v. Barry*, 502 U.S. 244, 248 (1992).[5] Although Rule 3's "dictates are jurisdictional in nature," courts should construe the language of Rule 3 liberally when determining compliance.[6] *See id.* at 248.

"When, as here, a party seeks to argue the merits of an order that does not appear on the face of the notice of appeal," the Ninth Circuit instructs the consideration of two factors. *Lolli v. County of Orange*, 351 F.3d 410, 414 (9th Cir. 2003). First, whether the "'intent to appeal a specific judgment can be fairly inferred' and [second], whether 'the appellee [was] 'prejudiced by the mistake.'" *Id.* (quoting *Montes v. U.S.*, 37 F.3d 1347, 1351 (9th Cir. 1994)).[7] When

---

[4] Garlock's "Notice of Appeal and Statement of Election to Have Appeal Heard by District Court" states: "Appellant appeals the judgment entered by the bankruptcy court on July 28, 2016, attached hereto as Exhibit 'A.' Appellant previously filed a timely motion to amend the judgment under FRBP 9023, for which the order disposing of the motion was entered October 3, 2016. Accordingly, this appeal is timely, as it is filed within 14 days of entry of the order disposing the last motion. Fed. R. Bankr. P. 8002(b)(1)(B) (2016)." The notice also identifies the parties, attorneys, and Garlock's intention to have the appeal heard in District Court.

[5] Fed. R. App. P. 3(c) requires that a notice of appeal "designate the judgment, order, or part thereof being appealed."

[6] Because this issue is jurisdictional in nature, it must be resolved before the Court considers the merits of Garlock's appeal of the denial of his motion to amend. Nonetheless, the question is largely academic because Garlock's appeal ultimately fails. *See infra* Part IV.D.

[7] The Ninth Circuit in *Lolli* examined Rule 3(c) of the Federal Rules of Appellate Procedure,

1     examining both factors, courts should consider "'whether the affected party had notice of the issue

2     on appeal and, second, whether the party had an opportunity to fully brief the issue.'" *Le v.*

3     *Astrue*, 558 F.3d 1019, 1022 (9th Cir. 2009) (quoting *Meehan v. County of Los Angeles*, 856 F.2d

4     102, 105 (9th Cir. 1988)). "'Where the appellee has argued the merits fully in its brief, it has not

5     been prejudiced by the appellant's failure to designate specifically an order which is subject to

6     appeal.'" *Id.* at 1025 (quoting *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764,

7     772 (9th Cir. 1991)).

8         In *Lolli*, the court inferred the appellant's intent to appeal a summary judgment order,

9     although not stated in the notice of appeal, because the appellant provided a "full discussion" of

10    the summary judgment order in its opening brief, and the appellees provided a "detailed response,"

11    demonstrating that they were not prejudiced by the mistake. 351 F.3d at 414-15. Similarly, here,

12    Garlock questioned directly in his opening brief "whether the bankruptcy court committed error

13    when it improperly denied Defendant's motion to amend the judgment under FRBP 9023,"

14    providing clear notice to Brune and Thomas of his intention to appeal that order. Brune and

15    Thomas, while arguing that the denial was outside the scope of the complaint, were still able to

16    brief the issue in their response, in which they discussed the standard for reconsideration and

17    argued the bankruptcy court's original determination should stand. This complete discussion of

18    the issue demonstrates they inferred Garlock's intent to appeal the order and that they would not

19    be prejudiced by its consideration on appeal. *See Le*, 558 F.3d at 1025.

20        Although the Ninth Circuit gives courts considerable leeway to review unspecified

21    judgments, Garlock correctly notes that the situation here differs slightly from *Lolli* and other

22    similar Ninth Circuit decisions. In *Lolli*, 351 F.3d at 414-15, and *Hilken v. Dep't of Def.*, 836 F.3d

23    1037, 1042-43 (9th Cir. 2016), the Ninth Circuit permitted review of an underlying judgment not

24    specified in the notice of appeal, where the appellant has explicitly appealed a related order.

25    Apparently, there is no direct authority for the proposition that the court can review a related order

26

27    which has virtually identical language to FRBP 8003(a)(3).

28

1    not specified in the notice of appeal, where only the underlying judgment is specified in the notice.

2    Yet the factors set forth in *Lolli* are not conditioned on the recurrence of the exact situation in that

3    case, and can be used here to determine whether the court has jurisdiction to review an order

4    unspecified in the notice of appeal. *See Lolli*, 351 F.3d at 414-15. Thus, because Brune and

5    Thomas clearly inferred Garlock's intent to appeal the denial of the motion to amend and, as

6    evidenced by their thorough briefing on that order, were not prejudiced by Garlock's omission,

7    this Court has jurisdiction to review both the underlying judgment and the denial of the motion to

8    amend that judgment.

9    **D. Denial of Appellant's Motion to Amend Was Not an Abuse of Discretion**

10    Garlock asserts the bankruptcy court abused its discretion in denying his motion to amend

11    the judgment. A motion to amend the judgment is governed by Federal Rule of Bankruptcy

12    Procedure 9023, which incorporates Rule 59 of the Federal Rules of Civil Procedure in its entirety.

13    In *McDowell v. Calderon*, the Ninth Circuit catalogued four independent grounds upon which a

14    motion to amend a judgment under Rule 59(e) may be granted: (1) the motion is necessary to

15    "correct manifest errors of law or fact upon which the judgment is based"; (2) the court is

16    presented with "newly discovered or previously unavailable" evidence; (3) the motion is necessary

17    to prevent "manifest injustice"; or (4) there has been "an intervening change in controlling law."

18    197 F.3d 1253, 1255 n.1 (citation and internal quotation marks omitted). The rule offers "an

19    extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial

20    resources.'" *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation and internal

21    quotation marks omitted). "A Rule 59(e) motion may *not* be used to raise arguments or present

22    evidence for the first time when they could reasonably have been raised earlier in the litigation."

23    *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted).

24    To be the object of a motion for reconsideration, newly discovered evidence must have been

25    "discovered after the judgment" and could not have been "discovered earlier through due

26    diligence." *Dixon v. Wallowa County*, 336 F.3d 1013, 1022 (9th Cir. 2003) (citation omitted).

27    In his motion for reconsideration and again now on appeal, Garlock contends he has

28

1    incontrovertible proof the easement existed across the Oro Dam property, proof which he was

2    simply unable to produce prior to judgment. This "newly discovered evidence," according to

3    Garlock, should have established beyond dispute that amendment to the judgment was both

4    necessary to "correct manifest errors of law" and to prevent "manifest injustice," as the purported

5    easement misrepresentation influenced the bankruptcy court's ruling for plaintiffs. *See McDowell*,

6    197 F.3d at 1255 n.1. The court, however, fairly concluded that the evidence was not "newly

7    discovered or previously unavailable," as it could have been produced "earlier through due

8    diligence," and that Garlock was using the motion to "raise arguments or present evidence for the

9    first time when they could reasonably have been raised earlier in the litigation." *Kona*

10   *Enterprises*, 229 F.3d at 890. The court doubted that it could consider the evidence newly

11   discovered if a "man on the street could have asked for a title report on or searched the public

12   records and gotten" the documentation. Mot. to Am. J. H'rg at 17:3-4. The court's conclusion

13   that the easement documentation could have been recovered earlier through due diligence was not

14   illogical, implausible, or without support in the record, but rather followed from the fact that "the

15   trial spanned a long period of time and the easement was in play as a subject matter very early on."

16   Mot. to Am. J. H'rg at 17:1-2; *see Hinkson*, 585 F.3d at 1262. The publicly recorded easement

17   was supposed to generate an extra $200,000 a year for the property, making it a significant part of

18   the fraud claim and of the investment itself. The court concluded that because of the easement's

19   obvious importance from the beginning of the case, the documentation could have and should

20   have been recovered earlier through due diligence. *See Dixon*, 336 F.3d at 1022.

21          Garlock further argues that, even if the easement documentation could have been

22   introduced earlier at trial, the court still should have amended its judgment on the basis of the first

23   and third *McDowell* grounds for reconsideration. While Garlock correctly argues each *McDowell*

24   ground is an independent bases for reconsideration, Garlock misconstrues the bankruptcy court's

25   order as requiring that the evidence be newly discovered in order even to consider the other factors

26   and ultimately to amend the judgment. The record reflects that the bankruptcy court considered

27   each factor independently, determining Garlock had not satisfied any one of them. After

28

1  concluding the evidence did not amount to "newly discovered evidence," the bankruptcy court

2  went on to explain there is no authority for the proposition that a "manifest error of fact includes

3  the failure of a party to prove a fact that it could have proven" earlier in trial.  Mot. to Am. J. H'rg

4  at 19:24-25.  The court likewise reasoned that Garlock did not face any "manifest injustice"

5  because he had "plenty of opportunity to prove that there was an easement." *Id.* at 21:12-13.

6  According to the court, Garlock should have obtained the documentation because the easement's

7  existence was obviously critical to plaintiffs claim and to the investment itself, as the easement

8  was a "hook on which the appraiser hung a huge increase in value." *Id.* at 21:17-18.  The

9  bankruptcy court correctly concluded that Garlock's inability to secure the documentation over the

10  trial period did not constitute a "manifest injustice," and that it did not commit a manifest error of

11  law or fact by not considering the "public, discoverable document" months after the lengthy trial

12  had concluded. *See id.* at 34:19-25.  Accordingly, the bankruptcy court did not abuse its discretion

13  in denying Garlock's motion to amend the judgment. *See Hinkson*, 585 F.3d at 1262.

### V.  CONCLUSION

15  The bankruptcy court did not abuse its discretion in denying Garlock's motion to amend

16  the judgment, nor did it abuse its discretion by allowing the bank loan issue to be tried by implied

17  consent under Rule 15(b)(2).  Its findings of fact likewise stand.  Consequently, the bankruptcy

18  court's order denying Garlock's motion to amend and its judgment against Garlock under 11

19  U.S.C. § 523(a)(2)(A) are both affirmed.

20

21  **IT IS SO ORDERED**.

22

23  Dated: July 31, 2017

24  _____

25  RICHARD SEEBORG
   United States District Judge

26

27